UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| Ahmed Chowdhury, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Target Corporation,<br><br>　　　　　Defendant. | x<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>x | Case No.<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Ahmed Chowdhury (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

**NATURE OF THE ACTION**

1.　　　　This action seeks to remedy the deceptive and misleading business practices of Target Corporation (hereinafter "Target" or "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Up&Up™ branded Fragrance Free and Fresh Cucumber Scented baby wipes products throughout the United States (hereinafter the "Products"[1]).

2.　　　　Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to

---

[1] The Products at issue are: 1) Up & Up Fragrance Free Baby Wipes 20, 72, 216, 800, 1200 Count with a manufacturing date code of November 07, 2025 (071125X/XX) to May 5, 2026 (050526X/XXX) and expiration dates between May 10, 2028 (100528) through November 5, 2028 (051128). 2) Up & Up Fresh Cucumber Scented Baby Wipes 72, 216, 800 Count with a manufacturing code of December 29, 2025 (291225X/XX) to December 30, 2025 (301225X/XX) and expiration dates between June 29, 2028 (290628) through June 30, 2028 (300628). Subject to further discovery, Plaintiff reserve the right to amend the Products at issue to include any other baby wipes products that suffer from the same mislabeling.

consumers on its packaging that the Products are contaminated with *Burkholderia cepacia complex* ("*B. cepacia*") and *Burkholderia gladioli* ("*B. gladioli*").

3.    As described in further detail below, the Products contain *B. cepacia* and *B. gladioli* which could lead to serious and life-threatening infections.  Per the FDA:

> Use of products contaminated with *Burkholderia cepacia complex* and *Burkholderia gladioi* may result in serious and life-threatening infections. The products are predominantly used on newborns, infants, and young children, who are particularly vulnerable to opportunistic infection due to their immature immune systems. In healthy individuals, use of the product on skin with minor lesions will more likely result in local infections, whereas in immunocompromised individuals, newborns, infants and young children, the infection is more likely to spread into the bloodstream, potentially leading to life-threatening sepsis or pneumonia.[2]

4.    Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the baby wipes products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and even be life threatening.

5.    Unfortunately for consumers, including Plaintiff, the baby wipes Products they purchased contained *B. cepacia and B. gladioli*.

6.    Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain, or risk containing, *B. cepacia and B. gladioli*. Knowing of the presence of *B. cepacia* and *B. gladioli* is material to reasonable consumers. The presence of *B. cepacia* and *B. gladioli* was solely within the possession of Defendant, and consumers could only obtain such information by conducting and by sending the products off to a laboratory for extensive testing. This omission leads a reasonable consumer to believe they are not purchasing a product with known bacteria such as *B. cepacia and B. gladioli* when in fact they are purchasing a product

---

[2] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/target-recalls-fragrance-free-and-fresh-cucumber-scented-baby-wipes-due-potential-microbial

2

that is indeed contaminated with the dangerous bacteria *B. cepacia and B. gladioli.*

7.      A representative example of Defendant's lack of disclosure on the Products is depicted below:





8.      Consumers like Plaintiff trust manufacturers like Defendant to sell products that are

safe and free from harmful known substances, including *B. cepacia and B. gladioli*.

9.     Plaintiff and other Class Members certainly expect that the baby products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

10.    Unfortunately for consumers, including Plaintiff, the baby wipes Products they purchased contained, or were at risk of containing, *B. cepacia and B. gladioli*.

11.    While Defendant issued a recall of the Product on June 4, 2026 (the "Recall"), this Recall has not been effective. The recall announcement instructs consumers who purchased the Product to stop using them immediately. But, the Recall is purposely designed to prevent consumers from getting a refund for the contaminated and recalled Products.

12.    Defendant's own recall and other testing confirmed and demonstrated the presence of the dangerous bacteria *B. cepacia and B. gladioli* in Plaintiff' products.

**Defendant's Recall is Insufficient**

13.    Defendant issued a recall of certain lots of its Products on June 04, 2026.[3]

14.    The Products were recalled, and consumers were instructed to "immediately stop using the recalled products."  Hence, the baby wipes are unreasonably dangerous, and unsuitable for one of their principal and intended purposes.

15.    The Recall provides that consumers with questions or refund requests are directed to return the Products to any Target store or to contact Target guest relations.

16.    Defendant is well aware that any consumer who was made aware of the recall would be predisposed to throwing the Products away, and Defendant leans into this predisposition by directing consumers to immediately stop using the recalled Products.  Defendant is also aware

---

[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/target-recalls-fragrance-free-and-fresh-cucumber-scented-baby-wipes-due-potential-microbial#recall-announcement

that consumers shop in multiple locations and may or may not purchase the Products at the same location each time. Also, most consumers do not maintain receipts and therefore cannot obtain a refund at the purchase location for the recalled Products.

17.     Accordingly, Defendant's recall is designed to minimize Defendant's own liability, to reach very few people, and to benefit very few of the consumers who purchased the Products.

18.     The class action remedy is superior to Defendant's failed recall in every conceivable fashion.

19.     Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain *B. cepacia* and *B. gladioli*. This omission leads a reasonable consumer to believe they are not purchasing a product that contains harmful known bacteria, including *B. cepacia* and *B. gladioli*, when in fact they are purchasing a product contaminated with *B. cepacia* and *B. gladioli*.

20.     Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves. As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing products that are safe for use and do not contain any harmful ingredients. Indeed, consumers expect the packaging and labels to accurately disclose the presence of such bacteria within the Products. Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, *B. cepacia* and *B. gladioli.*

21.     Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *B. cepacia* and *B. gladioli*, which is dangerous to one's health and well-being.  Nevertheless, Defendant does not list or mention *B. cepacia* and *B. gladioli* anywhere on the Products' packaging or labeling.

22. Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products was material to Plaintiff and Class Members. Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a baby product contaminated with *B. cepacia* and *B. gladioli* that is harmful to baby, infants, toddlers, and consumers' health.

23. That is because Defendant's Products containing, or at risk of containing *B. cepacia* and *B. gladioli*, have no value, or at the very least, Defendant was able to charge significantly more for the Products than they would have had they not omitted the fact that the Products contain—or possibly contain— *B. cepacia* and *B. gladioli*.

24. As set forth below, Defendant's Products are in no way safe for human use and are entirely worthless.

25. Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels.   Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

26. Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350 and resulted in unjust enrichment to Defendant. Defendant also breached and continues to breach its warranties regarding the Products.

27. Plaintiff bring this action against Defendant on behalf of themselves and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

6

## FACTUAL BACKGROUND

28.     Target is a big box general merchandise retailer of consumer goods, which includes baby products. Target sells national brand products and its own private label products.

29.     Target's baby wipes Products are sold under its private label known as "Up & Up." Up & Up is a registered trademark of Target Brands, Inc. Up & Up was introduced in 2009 and is one of Target's 45 private labels (or "owned brands")[4]. Target describes Up & Up as "an everyday essentials brand that offers high quality, affordable products."[5] Up & Up makes or white labels over 2,000 products, including well known products, such as the Up & Up Fragrance Free and Fresh Cucumber Scented baby wipes Products.

30.     Defendant manufactures, markets, advertises, and sells the Up & Up Fragrance Free and Fresh Cucumber Scented baby wipes products. The Products are marketed as baby wipes, and that a consumer can use them as such.

31.     More specifically, Defendants market their Products as baby wipes that are "baby wipes," "soft and durable," "hypoallergenic," "pediatrician and dermatologist tested," "99% water formula," and "made with plant-derived ingredients."  The label of the Product notes that the Product is safe and effective to be used as "baby wipes."

32.     All of Defendant's baby wipes Products are manufactured in the same manner pursuant to Target's contracts and specifications.

33.     Target's Up & Up branded baby wipes Products are attractive to consumers seeking baby Products that are less expensive than the national sellers while still providing a product provided by the Target national name. Defendant's baby wipes Products are widely marketed,

---

[4]   Products & Services: Target Brands, TARGET, https://corporate.target.com/about/products-services/targetbrands#:~:text=up%26up%20is%20an%20everyday%20essentials,products%20and%20r eformulated%20existing%20products (last visited XX)
[5] *Id*.

advertised, available, sold, and used by newborns, infants, young children, and adults (for their own use and for use by their children) throughout the United States and the world. The baby products industry is a highly competitive billion-dollar market. Many of Defendant's online and print advertisements and marketing materials featured newborns, infants, and children and colors meant to attract and appeal to their preferences, activities, and interests.

34. Consumers have become increasingly concerned about the products they use on their children. Companies, such as Defendant, have capitalized on consumers' desire for safe products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

35. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as harmful bacteria, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

36. The Products' packaging does not identify *B. cepacia* and *B. gladioli*. Indeed, *B. cepacia* and *B. gladioli* are not listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of *B. cepacia* and *B. gladioli* in the Products. This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, *B. cepacia* and *B. gladioli*.

37. However, the Products contain, or are at risk of containing, *B. cepacia* and *B. gladioli*.

38. Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing baby wipes products for many years, including producing and manufacturing the contaminated Products.

39. Defendant is in the unique and superior position of knowing the ingredients and

8

raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *B. cepacia* and *B. gladioli* contamination, as well as the ability to test the Products for *B. cepacia* and *B. gladioli* contamination prior to releasing the Products into the stream of commerce. Such knowledge is solely within the possession of Defendant.

40.    Accordingly, Defendant possesses superior and exclusive knowledge regarding the risks involved in the production and manufacturing of its Products. Such knowledge is not readily available to consumers like Plaintiff and Class Members.

41.    Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

42.    Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing *B. cepacia* and *B. gladioli* is likely to continue to deceive and mislead reasonable consumers, as they have already deceived and misled Plaintiff and the Class Members.

43.    Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they use on their children and themselves.  Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Products' labels, and the listed ingredients. Defendant knows that if they had not omitted that the Products contained *B. cepacia* and *B. gladioli*, then Plaintiff and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products.

44.    Consumers rely on marketing and information in making purchasing decisions.

45.    By omitting that the Products include *B. cepacia* and *B. gladioli* on the labels of the

9

Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contained *B. cepacia* and *B. gladioli*.

46.    Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

47.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

48.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without *B. cepacia* and *B. gladioli* over comparable products not so marketed.

49.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

a.    Paid a sum of money for Products that were not as Defendant represented;

b.    Paid a premium price for Products based on Defendant's false and misleading misrepresentations;

c.    Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted;

d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

e.    Were denied the benefit of the properties of the Products Defendant promised.

50.    Had Defendant not made the false, misleading, and deceptive representations and

10

omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiff and the Class Members would not have been willing to purchase the Products.

51.  Plaintiff and the Class Members paid for Products that do not contain *B. cepacia* and *B. gladioli*.  Since the Products do indeed or possibly contain *B. cepacia* and *B. gladioli*, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

52.  Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

53.  Plaintiff and Class Members saw the Products' packaging prior to purchasing the Products.  Had Plaintiff and Class Members known the truth about the Products, i.e., that they do or possibly contain *B. cepacia* and *B. gladioli*, they would not have been willing to purchase them at any price, or, at minimum would have paid less for them.

**<u>JURISDICTION AND VENUE</u>**

54.  This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than at least one Defendant,  (1) this is a class action involving more than 100 class members; (2) Plaintiff Chowdhury is a citizen of New York, and Defendant Target is a citizen of Minnesota; and (3) the

amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

55. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

56. Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

57. Plaintiff Ahmed Chowdhury is a citizen and resident of Queens Village, New York. During the applicable Class Period, Plaintiff Chowdhury purchased and used Defendant's Products that possibly contained, or had the risk of containing, *B. cepacia* and *B. gladioli*. Most recently, Plaintiff Chowdhury purchased his Products from a Target located in NY on January 30, 2026. Prior to purchasing the Product, Plaintiff Chowdhury saw the packaging of the Product.

58. Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff Chowdhury would not have been willing to purchase the Products or pay as much for the Products. Plaintiff Chowdhury purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products.  The Products Plaintiff received were worthless because they possibly contained *B. cepacia* and *B. gladioli*. Alternatively, Plaintiff Chowdhury paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

59.      Defendant Target Corporation is a Minnesota corporation with its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota, 55043. Target manufacturers, markets, distributes, and sells various baby wipes products, including Up&Up™ Fragrance Free and Fresh Cucumber Scented baby wipes.

60.      Defendant markets, advertises, sells, and distributes the Products throughout the United States and its territories. The Products, including those purchased by Plaintiff and Class Members, are available for sale on Defendant's website (www.target.com) and in their brick-and-mortar stores throughout the United States. Defendant authorized the false, misleading, and deceptive marketing, advertising, distribution, and sale of its Products.

## CLASS ALLEGATIONS

61.      Plaintiff bring this matter on of themselves and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

62.      The Class is defined as all consumers who purchased the Products anywhere in the United States within the applicable statute of limitations (the "Nationwide Class").

63.      Plaintiff Chowdhury also seeks to represent a subclass of individuals who purchased any of the Products in the state of New York within the applicable statute of limitations (the "New York Subclass").

64.      The Class and New York Subclass are referred to collectively throughout the Complaint as the Class.

65.      The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and

adequacy because:

66.    Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believe that there are thousands of consumers in the Class and Subclasses who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

67.    Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.    Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d.    Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e.    Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

68.    Typicality: Plaintiff are members of the Class and their respective Subclasses. Plaintiff' claims are typical of the claims of each Class Member in that every member of the Class

was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiff are entitled to relief under the same causes of action as the other Class Members.

69.     Adequacy: Plaintiff are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent, their consumer fraud claims are common to all members of the Class, they have a strong interest in vindicating their rights, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

70.     Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class and Subclasses. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

71.     Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

      a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

      b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

      c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a

manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.   Plaintiff know of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class Members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

72.   Accordingly, this Class Action lawsuit is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

16

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
### (On Behalf of Plaintiff and New York Subclass Members)

73.     Plaintiff Chowdhury repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

74.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

75.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and other Class Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

76.     There is no adequate remedy at law.

77.     Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

78.     Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have, or had the risk of having, *B. cepacia* and *B. gladioli*—is misleading in a material way in that it, *inter alia*, induced Plaintiff and other Class Members to purchase Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

79.     Plaintiff and other Class Members have been injured because they purchased Products that were mislabeled, unsafe, and entirely worthless. Accordingly, Plaintiff and the Class Members received less than what they bargained and paid for.

17

80.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and other Class Members to buy Defendant's Products.

81.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and other Class Members have been damaged thereby.

82.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and other Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the New York Subclass Members)

83.     Plaintiff Chowdhury repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

84.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

85.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

86.     Defendant's labeling and advertisements contain untrue and materially misleading

18

statements and omissions concerning its Products because it misrepresents that the Products are safe for use and doesn't list that the Products contain *B. cepacia* and *B. gladioli*.

87.     Plaintiff and the other Class Members have been injured because they saw the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and other Class Members received less than what they bargained and paid for.

88.     Defendant's advertising, packaging, and Products' labeling induced Plaintiff and other Class Members to buy Defendant's Products.

89.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

90.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

91.     Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

92.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

93.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and other Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**NEGLIGENCE**
**(On Behalf of Plaintiff and All Class Members)**

94.     Plaintiff repeat and reallege each and every allegation contained in all the foregoing

19

paragraphs as if fully set forth herein.

95.     The conduct of Defendant in manufacturing, distributing, and selling the Products with the contamination of *B. cepacia* and *B. gladioli* constituted negligence in failing to reasonably act in accordance with all applicable standards of care. Defendant owed Plaintiff and Class members a duty not to disseminate a materially defective product. Defendant breached said duty of care when it nevertheless manufactured, distributed, and sold the Products with the contamination of *B. cepacia* and *B. gladioli* to consumers, including Plaintiff.

96.     Defendant also breached its duty of care by negligently failing to timely and/or adequately warn Plaintiff and the Class of the contamination of *B. cepacia* and *B. gladioli*, even after Defendant was, or should have been, fully aware of the manufacturing defect in the Products.

97.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members suffered economic injury, entitling them to just compensation, as detailed below.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members)**

98.     Plaintiff repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

99.     Defendant was unjustly enriched at the expense of Plaintiff and other Class Members in the form of monies that Plaintiff and other Class Members paid for the Products.

100.    Plaintiff and Class Members seek restitution and disgorgement of such inequitably obtained monies.

**FIFTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

101.    Plaintiff repeat and realleges each and every allegation contained in all the

foregoing paragraphs as if fully set forth herein.

102. Plaintiff brings this claim individually and on behalf of all similarly situated Class Members.

103. Defendants, as the designers, manufacturers, packagers, labelers, marketers, distributors, and/or sellers expressly warranted that the Product were fit for their intended purpose by expressly warranting that the Product were "baby wipes" and were safe to use for newborn, infants, young children and adults. Additionally, Defendants warranted that the Products were "soft and durable," "hypoallergenic," "pediatrician and dermatologist tested," "99% water formula," and "made with plant-derived ingredients." The label of the Product notes that the Product is safe and effective to be used as "baby wipes."

104. Defendants made the foregoing express representation and warranty to all consumers, which became the basis of the bargain between Plaintiff, Class Members, and Defendants.

105. In fact, the Product is not fit for such purpose because the express warranty is a false, deceptive, and misleading misrepresentation. The Product is contaminated, was not manufactured or tested in compliance with good manufacturing practices, and was not safe for human use, particularly for the use in children.

106. Defendants breach their warranty and/or contract obligations by placing the Product into the stream of commerce and selling it to consumers. The fact that the Product has been recalled is an admission that the Product is unfit for its intended use and purpose, cannot be sold as baby wipes, and substantially and/or completely impairs the use and value of the Product.

107. Defendant thereby breached the following state warranty laws:

a. Code of Ala. § 7-2-313;

b.      Alaska Stat. § 45.02.313;

c.      A.R.S. § 47-2313;

d.      A.C.A. § 4-2-313;

e.      Cal. Comm. Code § 2313;

f.      Colo. Rev. Stat. § 4-2-313;

g.      Conn. Gen. Stat. § 42a-2-313;

h.      6 Del. C. § 2-313;

i.      D.C. Code § 28:2-313;

j.      Fla. Stat. § 672.313;

k.      O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313; and

xx.    Wyo. Stat. § 34.1-2-313.

108. Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Product if they had known the truth about the Product. Plaintiff and Class Members suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for Products that did not conform to what Defendant promised in its Product promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on Products that had less value than warranted or Products that they would not have purchased and used had they known the true facts about them. In addition, Plaintiff and Class Members paid a premium for Products that did not conform to the Defendant's warranties.

### SIXTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF
### MERCHANTABILITY
**(On Behalf of Plaintiff and All Class Members)**

109. Plaintiff repeat and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

110. Plaintiff bring this claim individually and on behalf of all similarly situated Class Members.

111. Defendants specifically deal in baby wipes and other baby products, including through their manufacturing, distribution, and sale of the Up & Up baby wipes products.

112. Defendants, as the designers, manufacturers, packagers, labelers, marketers, distributors, and/or sellers of the Product, impliedly warranted that the Product was merchantable,

24

*i.e.* the Product could be sold as baby wipes, and is fit for its ordinary purpose, *i.e.* the Products could be safely used as "baby wipes" and was safe to use on newborns, infants and children.

113.    In fact, the Product is not fit for such purpose or merchantable because the Product is contaminated, was not manufactured or tested in compliance with good manufacturing practices, and was not safe for human use, particularly for the use in children that was advertised to.

114.    As a proximate result of Defendants' above-described breach of implied warranty, Plaintiff and Class Members have sustained damages in an amount to be determined at trial

## JURY DEMAND

Plaintiff demand a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of themselves and all others similarly situated, pray for judgment as follows:

(a)    Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b)    Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

(c)    Awarding monetary damages and treble damages;

(d)    Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e)    Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f)    Awarding punitive damages;

(g)    Awarding Plaintiff and Class Members their costs and expenses incurred in this

action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(h)     Granting such other and further relief as the Court may deem just and proper.


Dated: June 15, 2026

**SULTZER & LIPARI, PLLC**

Jason P. Sultzer /s/

By:     _____

Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*

26